IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA J. TAYLOR, | ) | |
| | ) | CASE NO. 1:03CV1297 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| CITY OF CLEVELAND, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | Docket #23 |
| | ) | |

This case is before the magistrate judge on consent. Pending is the motion for summary judgment of defendant, the City of Cleveland ("the city") (Docket #23). Plaintiff, Linda J. Taylor ("Taylor"), opposes the motion ("Pl. opp."; Docket #30). For the reasons stated below, the court grants the city's motion.

I.

The court views the facts, as it must, in the light most favorable to the opposing party. Plaintiff alleges or does not deny the following facts.

Taylor was born on May 14, 1949. She worked for the city as Adolescent Counelor II, Caseworker II, and Cocaine Treatment Supervisor from June 4, 1986 until December 11, 2002. At the time she was working for the city she was a Licensed Professional Counselor and a Certified Chemical Dependency Counselor and had an Master's degree in Education and Community Agency Counseling. Taylor claims, and the city does not contest, that she had

a good performance record while working for the city.

From 1988 until she was laid off, Taylor worked as the Cocaine Treatment Supervisor for the Centerpoint Project, a drug counseling project funded by the Alcohol and Drug Addiction Services Board ("ADASB") of Cuyahoga County. The other supervisory or administrative personnel employed at the project were Donald Cook ("Cook"), the Project Coordinator, and Charles Byrd ("Byrd"), a psychiatric social worker who served as Deputy Project Coordinator. Cook's, Byrd's, and Taylor's positions were funded by an ADASB grant. The Centerpoint Project also used funds from the ADASB grant to employ four counselors: Maxine Drewnowski ("Drewnowski"; b. 2/5/45), LaDoris Scott ("Scott"), Sebasatian J. Kannamthanam ("Kammamthanam"), and Catherine Sims ("Sims"; b. 1/2/53).

Taylor alleges that although she had the job title of supervisor from 1988 to 2002, her job consisted exclusively of counseling and administrative work. According to Taylor, she had been offering direct service to clients for four years prior to her being laid off and had the single largest caseload of any drug counselor within the Center Point Project. The city does not dispute this claim. The city replies, and Taylor does not deny, that she developed policies and procedures for the project, attended policy-assessment meetings with other administrators, referred to herself as a supervisor in correspondence, had the independence in her job of a supervisor, received a salary of $41,150 per year compared with a counselor's salary of $30,804, and served as acting Project Coordinator when the Project Coordinator was absent.

Cook left the Centerpoint Project in September 2002. Louis Weigele ("Weigele"; b.

2

3/1/51) replaced him as director in September or November 2002.[1]

In 2002 the ADASB concluded that the Centerpoint Project was administratively top-heavy. On November 26, 2002 the ADASB ordered the city to suspend the project, remove clients from services, and reorganize in such a way that there would be proportionally fewer administrators for the number of people delivering counseling services. As the city did not have money to pay personnel during the reorganization and did not know how many people would be hired in what positions after the reorganization, the city laid off Taylor and most of the cocaine treatment counselors. The city retained Weigele as Project Coordinator and also retained Scott as a counselor to facilitate the transfer of clients to other referral services.[2]

Taylor alleges that at the direction of the city's Health Commissioner, Wendy Johnson ("Johnson"), she told her clients that their treatment would be terminated. Many became upset at the news. Taylor claims that some asked her for information about who they should contact to complain about the termination of treatment. Taylor says that the law obligated her to provide these clients with that information. On November 26, 2002 Johnson called Taylor. Taylor asserts that Johnson was irate and denied that she had told Taylor to terminate services to clients.

Taylor received official notification of her layoff on November 27, 2002. She received

---

[1] Taylor did not apply for the open position of Project Coordinator. The city asserts, and Taylor does not contest, that Taylor was not qualified for that position because the position called for someone who was a Licensed Independent Social Worker, a credential which Taylor did not have.

[2] Kammamthanam resigned rather than being laid off. Lydia Hill, a Caseworker Supervisor, and Lewis Burrell, an Activities Therapist, also worked for the Centerpoint Project. They were retained during and after the reorganization because their positions were funded by grants from sources other than the ADASB.

a letter that day from Johnson which said in relevant part:

> The Alcohol and Drug Addiction Services Board of Cuyahoga County informed the City of Cleveland Office of Mental Health on November 26th that all treatment services in the Centerpoint and House of Corrections programs be suspended immediately. The contract suspension is expected to last 60 days. During this time we will be expected to reorganize our program and will not be reimbursed for services.
>
> Therefore, I regret to inform you that due to lack of funds and requirements that we reorganize our program, you will be placed on layoff status as a Cocaine Treatment Supervisor with the Cleveland Department of Public Health, Division of Health, effective close of business on December 11, 2002. You will be advised of any change of status that might affect your employment situation. Please keep the City informed of your address.

Letter from Johnson to Taylor, November 27, 2002, Pl. opp., Exh. B. The city claims, and Taylor does not contest, that when she was laid off the city placed her name on the layoff list for Cocaine Treatment Supervisor.

After the reorganization of the Centerpoint Project, the ADASB reinstated its grant. The city asserts, and Taylor does not contest, that after the reorganization Weigele assumed those administrative responsibilities which had been Taylor's. The city began re-staffing the reorganized project by hiring five counselors for the new counseling positions.[3] The counselors who had been laid off were members of the American Federation of State and Local Employees, Local 100 and had contractually-guaranteed recall rights. These counselors were contacted first with offers of re-employment. Drewnowski refused the offer of re-employment; Sims accepted and returned to work. The remaining four counseling positions were filled from those persons who had responded to an internal job posting of the

---

[3] During the reorganization counselors were reclassified as Preventive Health Counselors, a job similar to the previous job of Cocaine Treatment Counselor.

4

open positions. The persons hired for the positions were John Jones ("Jones"; b. 5/4/54), James Minnieweather ("Minnieweather"; b. 10/24/43), Jack Muzzio ("Muzzio"; b. 5/14/72), and Donna Watson ("Watson"; b. 2/14/50). Thus, after the city reorganized the Centerpoint Project, the persons in positions funded by the ADASB grant at the project consisted of Weigele, the Project Coordinator, and Sims, Jones, Minnieweather, Muzzio, and Watson, all counselors.

The city did not contact Taylor to tell her that her position had been eliminated or to tell her about the open counseling positions at the reorganized Centerpoint Project. The city claims that Taylor was not recalled because she was not a member of the union who must be offered a chance to return and because there was no supervisory position available for her after the reorganization. The city also claims that it did not believe that Taylor would be interested in a counseling position.

Taylor filed the instant action on June 30, 2003. Taylor alleges age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). The city denies Taylor's claim and moves for summary judgment.

II.

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U. S. 317 (1986). The substantive law of the case identifies which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Id.* at 323. The nonmoving party must then show

the existence of a material fact which must be tried. *Id.* at 324.

When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to . . . the party opposing the motion . . . ." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962); *Aetna Ins. Co. v. Loveland Gas & Elec. Co.*, 369 F.2d 648 (6th Cir. 1966). This includes taking the nonmoving party's uncontradicted allegations as true and giving the benefit of the doubt to the nonmoving party's assertions when they conflict with those of the movant. *Bishop v. Wood*, 426 U.S. 341 (1976); *Bosely v. City of Euclid*, 496 F.2d 193, 197 (6th Cir. 1974).

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex,* 477 U.S. at 324. The nonmoving party may oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves...," *id.*, or by any other evidentiary material admissible at trial. *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993); *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, 10A, § 2721 (1998). Conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871 888-89 (1990). There must be enough evidence that a reasonable jury could find for the nonmoving party. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989).

III.

Taylor argues that the city discriminated against her because of her age when it laid her off and when it failed to contact her regarding the open counseling positions at the reorganized Centerpoint Project.  The city moves for summary judgment on Taylor's claims.

A.  *Analyzing claims of age discrimination*

The ADEA forbids employers "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  A plaintiff can establish an age discrimination case under the ADEA in two ways:  1) by establishing direct evidence of discrimination or 2) by following the burden-shifting analysis of *McDonnell Douglas vs. Green*, 411 U.S. 792 (1973).  *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992); *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 547-48 (6th Cir. 2004).  Direct evidence "proves the existence of a fact without requiring any inferences." *Rowan*, 360 F.3d at 548.  In the instant case, Taylor introduces no direct evidence of age discrimination.

To establish a prima facie case of age discrimination using the *McDonnell Douglas* framework, a plaintiff must show that:  (1) she is at least 40 years of age;  (2) she was subjected to an adverse employment action;  (3) she was qualified for the position;  and (4) she was treated differently than a significantly younger person.  *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 311-13 (1996); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003).  In age discrimination cases the protected class consists of workers

at least 40 years old, and a person "significantly younger" than plaintiff must be at least six years younger. *Grosjean*, 349 F.3d at 335, 340. "Similarly-situated" in the context of a *McDonnell Douglas* analysis means that all of the relevant aspects of plaintiff's employment situation are "nearly identical" to those of the non-protected employees whom plaintiff alleges were treated more favorably. *Pierce v. Commonwealth Life Ins, Co.*, 40 F.3d 796, 802 (6th Cir. 1994). "The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances." *Id.* (quoting *Ruth v. Children's Med. Ctr.*, 1991 WL 151158, at * 6 (6th Cir. Aug. 8, 1991)).

Once the plaintiff creates a presumption of discrimination by establishing a prima facie case of discrimination, the defendant has the burden of moving forward by rebutting this presumption with evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The defendant must produce "evidence of sufficient weight that gives rise to a genuine issue of fact as to whether the defendant was motivated by the proffered reason." *Id.* When the defendant has produced evidence of a legitimate, non-discriminatory reason for the employment action, the burden shifts back to the plaintiff to show that the defendant's proffered, legitimate reason was a pretext for impermissible discrimination. *Rowan*, 360 F.3d at 547. Although the burden of going forward shifts from party to party, the ultimate burden of persuading the factfinder that the defendant intentionally discriminated against the plaintiff always remains with the plaintiff. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

B.     *Whether Taylor's layoff was motivated by age discrimination*[4]

Taylor is unable to establish a prima facie case of age discrimination due to her layoff because she cannot show that she was treated differently than persons outside the protected class. The only individuals who were not laid off when the Centerpoint Project was reorganized were the Project Director and one of the counselors, Scott. Weigele had replaced Cook just two months before the reorganization and was 51 years old at that time, just two years younger than Taylor. Thus, Weigele was not significantly younger than Taylor. Scott, the counselor trained to help with the reorganization, was significantly younger than Taylor, but she was not similarly situated to Taylor. Even if we assume that Taylor did no supervising and her job consisted largely of counseling in her last four years at the Centerpoint Project, Taylor still had administrative responsibilities that Scott did not have. Because their duties were not identical, the two were not similarly-situated for purposes of a *McDonnell Douglas* analysis.

Moreover, even if Taylor were able to show that during the layoff she was treated differently than similarly situated persons significantly younger than her, she would not be able to establish a prima facie case of age discrimination. Taylor was laid off as part of a workforce reduction. Even if Taylor is correct that there were more persons working for the Centerpoint Project after the reorganization than before, this does not mean that the

---

[4] To the extent Taylor argues discriminatory conduct in termination of individuals earning higher salaries, "the ADEA only bars discrimination on account of age; it does not place on employers an affirmative obligation to retain older workers wherever a reduction in staff becomes necessary." *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 517 (6th Cir. 1991).

reorganization was not a workforce reduction. The elimination of some categories of employment during a restructuring may be considered a reduction in force even if overall employment is increased. *Wohler v. Toledo Stamping & Mfg. Co.*, 1997 WL 603422, at *5 (6th Cir. Sept. 30, 1997). There were fewer *administrative* personnel working at the Centerpoint Project after the reorganization, and Taylor's duties were distributed among other persons:

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir. 1990). No one was hired to assume all of Taylor's duties. Rather, her counseling obligations went to counselors, and her administrative duties went to Weigele. This is the hallmark of a workforce reduction.

Because Taylor was laid off as part of a workforce reduction, offering evidence to support the elements usually required by *McDonnell Douglas* to establish a prima facie case is not sufficient. In addition to establishing the first three elements of a prima facie case, Taylor must provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes*, 896 F.2d at 1465 (citing *LaGrant v. Gulf and Western Mfg. Co.,* 748 F.2d 1087, 1090 (6th Cir. 1984) ( "[t]he mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of

age discrimination")).

A plaintiff may carry her burden of showing that the employer singled her out for discharge for impermissible reasons in a variety of ways. Frequently, plaintiffs offer statistical evidence which allows the conclusion of discharge for impermissible motives:

> Appropriate statistical data showing an employer's pattern of conduct toward a protected class as a group can, if unrebutted, create an inference that a defendant discriminated against individual members of the class.  To do so, the statistics must show a significant disparity and eliminate the most common nondiscriminatory explanations for the disparity.  Since all of the discharged employees are arguably qualified in work force reductions, the most obvious explanations for the discharge of any one employee are lower proficiency and/or random chance.

*Barnes*, 896 F.2d at 1466.  Plaintiffs may also present circumstantial evidence of practices suggesting a preference for younger employees, *Holley v. Sanyo Mfg., Inc.,* 771 F.2d 1161, 1165-66 (8th Cir. 1985), or show a pattern of terminating older workers when a reduction in force occurs, *McCorstin v. U.S. Steel Corp.,* 621 F.2d 749, 754 (5th Cir. 1980), to allow an inference of age discrimination.  Taylor does not present any evidence, statistical or otherwise, which would allow an inference of age discrimination as motivating her layoff.

Because Taylor fails to show that she was treated differently than someone significantly younger than her and fails to present any evidence which would allow an inference of age discrimination in laying her off, the court grants the city's motion for summary judgment as regards Taylor's claim that her layoff was motivated by age discrimination.

C. *Whether the failure to notify Taylor of an opening was motivated by age discrimination*

Taylor is also unable to show that the failure to notify her of the open counseling positions was motivated by age discrimination.  Taylor claims that because most of her job

consisted of counseling and because she was qualified for that position, the city should have notified her when counseling positions opened. Taylor argues that the failure to do so was the result of age discrimination.

Taylor's argument is not well-taken. Taylor does not establish a prima facie case of discrimination in the failure to notify her of open counseling positions because she does not show that she was treated differently than a significantly younger person. No significantly younger person similarly situated to Taylor was notified of the position where Taylor was not. The laid-off counselors whom the city notified of the open counseling positions were not similarly situated to Taylor, as has already been discussed, because their positions and Taylor's had differing responsibilities. Moreover, even if the laid-off counselors could be considered similarly situated to Taylor, the two laid-off counselors who were notified of the open positions, Drewnowski and Sims, were not significantly younger than Taylor. Thus, that the city notified them of the position while not notifying Taylor does nothing to establish a prima facie case of age discrimination.

Further, even if Taylor did establish a prima facie case, the city has offered legitimate reasons for failing to notify Taylor of the open counseling positions: It was not obligated to notify her of those openings and it had no reason to believe that Taylor would be interested in such a position. Even if most of Taylor's duties when she was laid off involved direct counseling, she was nevertheless laid off from the position of Cocaine Treatment Supervisor. The city concedes that it was obliged to notify her of an opening in that position. In addition, the city's claim that it had no reason to believe that Taylor would be willing to take a counseling position is entirely plausible. The counseling positions had lower status, fewer

12

responsibilities, and a substantially lower salary than the Cocaine Treatment Supervisor position which Taylor had filled at the Centerpoint Project. A reasonable person might well assume that Taylor would be more inclined to be insulted rather than grateful at the offer of a counseling position after having served at a higher position for many years.

The city having offered legitimate, nondiscriminatory reasons for having failed to notify Taylor of the open counseling positions, Taylor does not offer evidence which would allow a reasonable jury to conclude that these reasons are mere pretexts for discrimination. Taylor argues that the city failed to notify her that the Cocaine Treatment Supervisor position had been eliminated and that this was a change in her status of which the city should have notified her as it promised to do. Taylor offers no evidence or legal citation to support her argument that the elimination of a job from which an ex-employee of the city has been laid off is a change of status which obliges the city to inform the ex-employee of that event. Taylor also asserts that she was more qualified for the counseling jobs than others who were hired and that Weigele knew that most of her duties had been as a counselor. While these assertions may be true, they do little to show that the failure to inform Taylor of open counseling positions was the product of age discrimination.

Taylor also argues that considerations of age must have played a role in the termination of herself and Byrd because they were both older persons making larger salaries than other employees of the Centerpoint Project. The city replies that Taylor and Byrd were terminated because they were the two remaining administrators other than the new project director in a program which was administratively top-heavy. As neither individual was replaced and as the number of full-time counselors in the Centerpoint Project was increased

13

while the number of administrators was reduced, the record supports the city's rationale for Taylor's and Byrd's layoffs.

Particularly damaging to Taylor's claim that she was not informed of the open counseling position because of age discrimination are the ages of the persons hired or re-hired as counselors after the reorganization: one was significantly younger than Taylor; four were about Taylor's age; and one was significantly older than Taylor. This age distribution argues strongly against the contention that age discrimination was a factor in the re-staffing of the Centerpoint Project.

Taylor fails to establish a prima facie case of discrimination and fails to offer evidence sufficient to allow a reasonable jury to conclude that the city's reasons for not telling her of the open counselor positions are a mere pretext for age discrimination. For these reasons the court dismisses her claim that the city's failure to notify her of the open counseling positions was motivated by age discrimination.

III.

For the reasons given above the the court grants the city's motion for summary judgment and dismiss Taylor's complaint with prejudice.

**IT IS SO ORDERED.**

Date: May 9, 2005                   /s/Patricia A. Hemann
                                    Patricia A. Hemann
                                    United States Magistrate Judge